# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Clyde Harrison, | Civil Action No. 2:16-2919-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Gregg Newman, | |
| Defendant. | |

This matter is before the Court on Defendant's first motion for summary judgment, which argues there is no evidence Defendant was negligent and no evidence supporting punitive damages, and Defendant's second motion for summary judgment, which argues the negligence complained of did not cause Plaintiff's transverse myelitis. For the reasons set forth below, the Court grants in part and denies in part Defendant's first motion for summary judgment, and denies Defendant's second motion for summary judgment.

## I. Background

On May 17, 2014, Plaintiff was injured during a "buddy" fishing trip while on a boat owned and operated by Defendant. There is no allegation Plaintiff was a passenger for hire. Plaintiff alleges the injury occurred when Defendant activated the electric windlass while Plaintiff was assisting with the anchor, causing a crush injury to Plaintiff's right ring finger. Allegedly, the anchor was stuck on the ocean floor. Plaintiff was manually pulling on the anchor line to free the anchor while Defendant toggled the windlass on and off. When the anchor was freed, the anchor line moved abruptly. As a result, Plaintiff lost his balance. As he attempted to brace himself, his hand landed on the windlass and his finger was caught by the anchor line. To treat the injury, Plaintiff received a TDAP vaccination and surgery to repair the finger. Plaintiff alleges that after

-1-

the initial treatment, his health drastically declined and that he was diagnosed with transverse myelitis.

Plaintiff filed this action in admiralty on August 24, 2016, asserting a claim for negligence and seeking actual and punitive damages. Defendant moved for summary judgment on July 31, 2017. Defendant filed two motions for summary judgment. In the first motion, Defendant argues he was not negligent because there is no genuine dispute that the windlass was an open and obvious danger. He also argues that there is no genuine dispute of material fact supporting a claim for punitive damages. In the second motion, Defendant argues there is no evidence Defendant's actions proximately caused Plaintiff's transverse myelitis.

## II.     Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do

not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. <u>Discussion</u>

#### A. **Open and obvious danger**

Personal injury negligence actions arising from navigation on the open ocean are within the admiralty jurisdiction of this Court. *See Schumacher v. Cooper*, 850 F. Supp. 438, 447 (D.S.C. 1994). Cases involving a tort committed on navigable water are governed by admiralty law. *Byrd v. Byrd*, 657 F.2d 615, 617 (4th Cir. 1981). If there is no admiralty rule on point, admiralty law looks to state law to supply the rule of decision. *Id.* at 617. "This rule is especially true in negligence causes of action." *Schumacher*, 850 F. Supp. 447. In the present case, "[t]o recover for his injuries, Plaintiff must prove that Defendant was negligent in the operation of his boat"—specifically, the operation of the windlass. *Id.* "The elements of negligence that must be established are a duty, a breach of that duty, proximate cause, and resulting injury." *Id.* Regarding the element of duty, "[i]t is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale*, 358 U.S. 625, 630 (1959). "The duty of ordinary care includes, of course, a duty to warn of harm that is reasonably foreseeable under the circumstances." *Bubla v. Bradshaw*, 795 F.2d 349, 353 (4th Cir. 1986).

Plaintiff proposes a different standard, pointing out that Defendant "admits and concedes that it was Defendant's job, duty, and responsibility to return Plaintiff to shore safely." (Dkt. No. 41 at 6.) The legal standard a lay witness admits to in a deposition is neither controlling nor persuasive. Federal admiralty law provides "a shipowner is not an insurer of its passengers' safety." *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988). It was not

-3-

Defendant's duty to return Plaintiff to shore safely. It was Defendant's duty to exercise reasonable care under the circumstances. *Kermarec*, 358 U.S. at 630.

Defendant's first motion for summary judgments asserts there is no evidence Defendant breached the duty of ordinary care because the windlass was an open and obvious danger. Under admiralty law, a vessel owner has a duty to warn passengers about only latent dangers. *Marin v. Myers*, 665 F.2d 57, 58 (4th Cir. 1981). But even assuming, *arguendo*, that the windlass was in fact an open and obvious danger, the crux of Plaintiff's allegations is not a failure to warn. Plaintiff argues Defendant was negligent in activating the windlass while Plaintiff was holding the anchor line or was in close proximity to the windlass.[1] (Dkt. No. 41 at 6.) That perhaps could be cast as an argument Defendant failed to warn Plaintiff that he was about to activate the windlass. But "[o]rdinary tort concepts also apply in admiralty actions," *Everett v. Gerhart*, No. 3:16 CV 3110, 2017 WL 3238156, at *2 (N.D. Ohio July 31, 2017), and it is an ordinary tort concept that an open and obvious danger is a danger that was known or obvious *to the injured party*, Restatement (Second) of Torts § 343A (1965). Plaintiff has admitted he knew the windlass was toggling on and off while he was pulling the anchor line (*see* Dkt. No. 34-2 at 10), but Plaintiff has raised a genuine issue of material fact regarding whether it was obvious that the anchor chain would respond as it did when Plaintiff freed the anchor (*see id.* at 11). The Court concludes that whether

---

[1] Plaintiff argues he has asserted "various claims of negligence" against Defendant. That is true, but Plaintiff's recitation of nineteen ways in which Defendant was purportedly negligent is mostly duplicative or irrelevant boilerplate. (Dkt. No. 1 ¶ 12 (*compare* "b. In failing to properly and safely operate the boat and raise the anchor" *and* "h. In failing to use proper seamanship at all times" *with* "p. In failing to exercise due care to safely and properly operate the boat and raise the anchor" *and* "n. In failing to use proper seamanship while attempting to raise the anchor"); *id.* (alleging Defendant somehow injured Plaintiff by "violating the applicable Rules of the Road," which are regulations for preventing collisions at sea).) The crux of this matter is whether Defendant was negligent in activating the windlass while Plaintiff was holding the anchor line or while Plaintiff was near the windlass.

the windlass was an open and obvious danger is a factual question for trial, and therefore denies Defendant's first motion for summary judgment as to liability.

## B. Punitive damages

Defendant argues Plaintiff has not alleged conduct warranting punitive damages. In admiralty, punitive damages are available only for conduct that constitutes "gross negligence" or "willful, wanton, and reckless indifference for the rights of others." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008); *see also Kahumoku v. Titan Mar., LLC*, 486 F. Supp. 2d 1144, 1152–53 (D. Haw. 2007). Under the general tort principles applicable in admiralty,

> Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.

Restatement (Second) of Torts § 500 cmt. a (1965) ("Reckless Disregard of Safety Defined"). The distinction between recklessness and gross negligence under general tort principles is less clear. The Court therefore looks to South Carolina's common law of torts. *See Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999) (looking to state law for elements of gross negligence in admiralty case). Under South Carolina law, gross negligence is the "failure to exercise slight care." *Clyburn v. Sumter Cnty. Sch. Dist. # 17*, 451 S.E.2d 885, 887 (S.C. 1994). But under South Carolina law, punitive damages are not available for gross negligence unless the negligence has "the nature of wantonness, willfulness or recklessness." *Solanki v. Wal-Mart Store No. 2806*, 763 S.E.2d 615, 619 (S.C. Ct. App. 2014). Thus, for the purposes of punitive damages, South Carolina treats gross negligence as a synonym for recklessness. That rule accords with the Supreme Court's discussion of punitive damages in admiralty in *Exxon Shipping*. *See* 554 U.S. at 493–94.

In this case, Plaintiff testified that he was "prepared for [the anchor line] to come loose" but "[w]hat I wasn't prepared for it to do was come loose so abruptly and for me to tumble back and lose my balance." (Dkt. No. 34-2 at 12.) Plaintiff has no evidence Defendant had materially more knowledge than Plaintiff did about how abruptly the line would bite when the anchor was freed. Nor does Plaintiff have evidence that a reasonable person in Defendant's position would have had knowledge about how abruptly the line would bite in those circumstances. Moreover, Plaintiff admits Defendant warned him to be careful. (*Id.* at 8, 16.) Again, the crux of this case is Plaintiff's assertion that (regardless of warnings) it was unreasonable for Defendant to activate the windlass while someone was standing on the bow to manipulate the anchor line. That is sufficient to create a triable issue with regard to negligence but it is insufficient to show the "conscious disregard" of a known risk or of a risk that a reasonable person in Defendant's position would have known that is necessary for punitive damages. The Court therefore grants Defendant's first motion to dismiss as to punitive damages.

Further, the Court agrees with Defendant that, in the absence of a claim for punitive damages, discovery of Defendant's assets is not relevant to any pending issue. In the event Plaintiff obtains a judgment in his favor, he may then seek discovery in aid of execution to the extent permitted by law. *See* Fed. R. Civ. P. 69. Defendant seeks an order striking or sealing certain portions of his deposition that purportedly disclose his assets, but Defendant has not provided the Court a copy of all deposition pages he wishes to redact. The Court directs Defendant to meet and confer with Plaintiff regarding proposed redactions from Defendant's deposition. Defendant may thereafter file a motion to strike.

## C.    Causation of transverse myelitis

Plaintiff was given a TDAP vaccination was part of the standard treatment for his injury. Plaintiff asserts an adverse reaction to that vaccination caused him to develop transverse myelitis,

a neurological disorder. Defendant argues Plaintiff cannot prove the TDAP vaccination caused his transverse myelitis. Defendant also argues that transverse myelitis from of a TDAP vaccination is not a reasonably foreseeable result of Defendant's conduct.

Defendant's challenge to Plaintiff's evidence on causation is insufficient under the summary judgment standard. Plaintiff's treating neurologist, Dr. Craig Woodard, has testified that it is probable the TDAP vaccination caused Plaintiff's transverse myelitis:

> Q. So are you able to say to a degree of medical certainty that it was caused by the Tdap shot or the vaccination as opposed to simply being idiopathic?
>
> A. I'd have to say there's a 50 percent—at least 50 or better chance of that given the temporal—the rapid temporal relationship, yes, the close relationship. If it was a longer period of time then you would have to call that into question.

(Dkt. No. 35-8 at 11.) Plaintiff's retained expert, Dr. Marshall White, has opined, "It is my opinion, to a reasonable degree of medical certainty, that Mr. Harrison did suffer acute transverse myelitis . . . caused by the tetanus shot." (Dkt. No. 42-3 at 3.) In other words, Plaintiff produces treating physicians and medical experts who opine that Plaintiff's injury was specifically caused by the standard treatment for Plaintiff's injury. Those opinions are sufficient to create a triable issue of material fact.

Indeed, Defendant's arguments for summary judgment do not really attempt to meet the summary judgment standard, but instead appear to be dry runs of trial arguments. Defendant argues Plaintiff's expert opinions on causation are "equivocal" in that they concede the TDAP vaccination might not have caused Plaintiff's transverse myelitis. Defendant will have an opportunity to impeach Plaintiff's witnesses at trial. Defendant argues "experts in the medical community and evidence in this case confirm that, despite the temporal association, the TDAP vaccine does not cause myelopathy." (Dkt. No. 35-1 at 8.) Plaintiff will have an opportunity to present that evidence at trial. Moreover, the Court observes that in other cases, courts have found

that a TDAP vaccination did cause transverse myelitis, which would seem to make the statement "the TDAP vaccine does not cause myelopathy" at least disputable. *E.g.*, *Raymo v. Sec'y of Health & Human Servs.*, No. 11-0654V, 2014 WL 1092274, at *23 (Fed. Cl. Feb. 24, 2014); *Helman v. Sec'y of Health & Human Servs.*, No. 10-813V, 2012 WL 1607142, at *3 (Fed. Cl. Apr. 5, 2012).

Defendant also argues that transverse myelitis from of a TDAP vaccination is not a reasonably foreseeable result of Defendant's conduct, and so Defendant's conduct was not a legal cause of Plaintiff's transverse myelitis. That argument is without merit, assuming the TDAP vaccination factually caused the transverse myelitis. The Court perceives no genuine dispute that a tetanus shot is part of the standard of emergency care for a severed fingertip. "An actor whose tortious conduct is a factual cause of harm to another is subject to liability for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, so long as the enhanced harm arises from a risk that inheres in the effort to render aid." Restatement (Third) of Torts: Phys. & Emot. Harm § 35 (2010). If Defendant is liable for Plaintiff's severed fingertip, then Defendant is liable for any harms caused by medical treatment reasonably required for Plaintiff's severed fingertip.

The Court therefore denies Defendant's second motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's first motion for summary judgment (Dkt. No. 34). Defendant's first motion for summary judgment is **GRANTED** as to Plaintiff's request for punitive damages; the motion is otherwise **DENIED**. Defendant's second motion for summary judgment (Dkt. No. 35) is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 28, 2017
Charleston, South Carolina